Cameron Nazemi, Esq. (SBN. 260155)
CWN, Inc., a professional law corporation
122 Waterford Circle
Rancho Mirage, CA. 92270
Phone Number: (949) 677-5296
Fax Number: (760) 770-6810
Email: cwnfirm@gmail.com

*Attorney for Plaintiffs.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MICHAEL TAFERNER, an individual; ITZEL DIAZ, an individual; and ROES 1-50; on behalf of themselves and all others similarly situated,<br><br>            Plaintiff(s),<br><br>   vs.<br><br>INSPIRE BRANDS, INC., a Delaware corporation; VALE MERGER SUB, INC., a Delaware corporation; DUNKIN' BRANDS GROUP, INC., a Delaware corporation; DUNKIN' DONUTS FRANCHISING LLC, a Delaware limited liability company; and DOES 1-10,<br><br>            Defendant(s). | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. **Violations of California Business & Professions Code § 17200, *et seq.*;**<br>2. **Violations of California Business & Professions Code § 17500, *et seq.*;**<br>3. **Breach of Express Warranty; Breach of Contract;**<br>4. **Fraudulent Concealment;**<br>5. **Negligent Misrepresentation;**<br>6. **Intentional Misrepresentation; and**<br>7. **Unjust Enrichment**<br><br>**[DEMAND FOR JURY TRIAL]** |

**CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

I.   CLASS ACTION COMPLAINT ................................................................. 1

II.  THE PARTIES .................................................................................. 2

A. Plaintiffs ......................................................................................... 2

B. Defendants ...................................................................................... 2

C. Alter Ego ........................................................................................ 3

D. Vicarious Liability for Acts of Franchisees ........................................ 5

E. Agency Liability for Acts of Franchisees .......................................... 5

F. Incorporation of Attachments & Exhibits .......................................... 7

III.  JURISDICTION AND VENUE ............................................................. 7

IV.  FACTUAL ALLEGATIONS .................................................................. 8

A. Summary of Facts ........................................................................... 8

B. Plaintiff John Michael Taferner ....................................................... 9

C. Plaintiff Itzel Diaz ......................................................................... 10

D. General Allegations ....................................................................... 11

E. Investigation by Class Counsel ....................................................... 12

V.  CLASS ACTION ALLEGATIONS ......................................................... 17

FIRST CAUSE OF ACTION: (Violation of Business & Professions Code § 17200 *et seq.*) (On Behalf of the California Subclass) ................................... 21

SECOND CAUSE OF ACTION (Violation of Business & Professions Code § 17500 *et seq.*) (On Behalf of the California Subclass) ............................... 24

THIRD CAUSE OF ACTION: (Breach of Express Warranty; Breach of Contract; Promissory Estoppel);
(On Behalf of General Class) ............................................................. 26

FOURTH CAUSE OF ACTION: (Fraudulent Concealment);
(On Behalf of General Class) ............................................................. 27

FIFTH CAUSE OF ACTION: (Negligent Misrepresentation);
(On Behalf of General Class) ............................................................. 28

ii

**CLASS ACTION COMPLAINT**

SIXTH CAUSE OF ACTION: (Intentional Misrepresentation);
(On Behalf of General Class) ...................................................................... 29

SEVENTH CAUSE OF ACTION: (Unjust Enrichment);
(On Behalf of the General Class) ............................................................... 30

VI. REQUESTED RELIEF ........................................................................ 31

VII. DEMAND FOR JURY TRIAL........................................................... 32

LIST OF ATTACHMENTS & EXHIBITS.............................................. 33

**CLASS ACTION COMPLAINT**

1    Plaintiffs JOHN MICHAEL TAFERNER, an individual, and ITZEL DIAZ, an
2    individual, ROES 1-50, and all others similarly situated (collectively, "**Plaintiffs**"),
3    allege the following upon information and belief, based on personal knowledge, by
4    and through their undersigned counsel:

5    ## I.      CLASS ACTION COMPLAINT

6    1.      Plaintiffs bring this action against Defendants INSPIRE BRANDS,
7    INC., a Delaware corporation, VALE MERGER SUB, INC., a Delaware corporation,
8    DUNKIN' BRANDS GROUP, INC., a Delaware corporation, DUNKIN' DONUTS
9    FRANCHISING LLC, a Delaware limited liability company, and DOES 1-10
10   (collectively, "**Defendants**"), on behalf of themselves and all others similarly
11   situated, who were charged a dine-in fee or other hidden fee at various Dunkin'®
12   restaurants (formerly known as Dunkin' Donuts®) (collectively, "**Dunkin' ®**"), a
13   brand owned, managed, and licensed by Defendants.

14   2.      Plaintiffs assert they were unknowingly charged a dine-in fee or other
15   junk fee by Defendants at its Dunkin'® branded locations.  Plaintiffs assert, based on
16   information and belief, that Defendants never disclosed the existence of a dine-in fee
17   or other hidden fee at its Dunkin'® branded locations, whether verbally or in writing,
18   at any time prior to each Plaintiff paying for their order.

19   3.      Plaintiffs assert, based on information and belief, that Defendants only
20   disclose the existence of a dine-in fee or other hidden fee on its receipt after each
21   Plaintiff remitted payment at its Dunkin'® branded locations.

22   4.      In the event Defendants properly informed Plaintiffs and members of the
23   Class that a dine-in fee or other hidden fee would apply to their orders, one or more
24   Plaintiffs or members of the Class would not have paid for their order, or would have
25   elected carry out, without the addition of the hidden fee.

26
27
28

- 1 -
**CLASS ACTION COMPLAINT**

## II.    THE PARTIES

### A. Plaintiffs

5.    Plaintiff JOHN MICHAEL TAFERNER ("Taferner") resides in Los Angeles County, California, and goes to the Dunkin'® located at 27125 Sierra Highway, Santa Clarita, CA. 91351.

6.    Plaintiff ITZEL DIAZ ("Diaz") resides in Los Angeles County, California, and frequently purchases breakfast at Dunkin'® located at 4920 Balboa Blvd., Encino, CA. 91316.

7.    Plaintiffs are unaware of the names of Plaintiffs identified herein as ROES 1-50, inclusive, and therefore bring this action on their own behalf by those fictitious names. Plaintiffs are informed and believe, and thereon allege, that ROES 1-50, like the named Plaintiffs, have been harmed by Defendants, with claims that are typical of the named Plaintiffs and common questions of law and fact predominate over individual issues. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of ROES 1-50, once their identities are ascertained.

### B. Defendants

8.    Defendant INSPIRE BRANDS, INC., is a Delaware corporation, with its headquarters and principal place of business located in Atlanta, Georgia, and is alleged, by information and belief, to be the owner of the Dunkin'® brand and all of its applicable franchisee operations by and through one or more of the other named Defendants.

9.    Defendant VALE MERGER SUB, INC., is a Delaware corporation, and a wholly owned subsidiary of Defendant INSPIRE BRANDS, INC., formed for the purpose of a reverse merger acquisition of DUNKIN' BRANDS GROUP, INC., a Delaware corporation, the former owner of the Dunkin'® brand.

**CLASS ACTION COMPLAINT**

10.     Defendant DUNKIN' BRANDS GROUP, INC., is a Delaware corporation, which Plaintiffs allege that as of December 15, 2020, no longer operates as a separate entity after Defendant INSPIRE BRANDS, INC. acquired the organization, by and through its wholly owned subsidiary, Defendant VALE MERGER SUB, INC.

11.     Defendant DUNKIN' DONUTS FRANCHISING LLC, is a Delaware limited liability company, with its principal place of business located in Canton, Massachusetts, and is alleged to be the current licensor and franchisor of all Dunkin'® locations.

12.     Plaintiffs are unaware of the names of Defendants identified herein as DOES 1-10, inclusive, and therefore sue them by those fictitious names. Plaintiffs are informed and believe, and thereon allege, that Defendants sued herein as DOES 1-10 are responsible in some manner for the practices, acts, conduct, and occurrences alleged herein, as either actual perpetrators or co-conspirators, aiders and abettors, officers, directors, and/or managing agents with the knowledge, control, authority, direction, and/or ratification of the other Defendants, and each of them. Plaintiffs will seek leave of Court to amend this Complaint to allege the true names and capacities of the DOE Defendants, and the roles they played, once their identities and/or manner of participation in the wrongful conduct herein described is ascertained.

**C. <u>Alter Ego Allegations</u>**

13.     At all relevant times, as alleged more fully herein, each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venturer of the other Defendants, and in doing the things alleged herein acted within the course and scope of such agency, employment, alter-ego and/or in furtherance of the joint venture. Each Defendant's acts or omissions alleged herein was done with the permission and consent of each of the other Defendants.

**CLASS ACTION COMPLAINT**

14.    At all times relevant hereto, Plaintiffs allege each named Defendant is the alter ego of Defendant INSPIRE BRANDS, INC., and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Defendants such that any separateness between them has ceased to exist in that INSPIRE BRANDS, INC., completely controlled, dominated, managed, and operated the other Defendants to suit its convenience.

15.    Specifically, at all times relevant hereto, Plaintiffs allege INSPIRE BRANDS, INC., (1) controlled the business and affairs of all other named Defendants, including any and all of their affiliates; (2) commingled the funds and assets of the corporate entities, and diverted corporate funds and assets for its own personal use; (3) disregarded legal formalities and failed to maintain arm's length relationships among the corporate entities; (4) uses the same office or business location and employed the same employees for all the corporate entities; (5) holds itself out as personally liable for the debts of the corporate entities; (6) used the corporate entities as a mere shells, instrumentalities or conduits for its individual businesses; (7) used the corporate entities to procure labor, services or merchandise for another person or entities; (8) manipulated the assets and liabilities between the corporate entities so as to concentrate the assets in one and the liabilities in another; (9) used corporate entities to conceal their ownership, management and financial interests and/or personal business activities; and/or (10) used the corporate entities to shield against personal obligations, and in particular the obligations as alleged in this Complaint.

16.    At all times relevant thereto, each named Defendant were not only influenced and governed by INSPIRE BRANDS, INC., but there was such a unity of interest and ownership that the individuality, or separateness, of all other Defendants has ceased, and that the facts are such that an adherence to the fiction of the separate

**CLASS ACTION COMPLAINT**

existence of these entities would, under the particular circumstances, sanction a fraud or promote injustice.

**D. <u>Vicarious Liability for Acts of Franchisees</u>**

17.    The named Defendants are vicariously liable for the acts and omissions of its Dunkin'® franchisee owners and operators, as Plaintiffs allege that Defendants retained significant control over each applicable franchisee's operations. This control includes, but is not limited to, use of point-of-sale systems and software, mandating adherence to standardized menus, recipes, and procedures; dictating employee training and uniforms; regulating restaurant design and layout; and engaging in extensive marketing and advertising campaigns that create a uniform brand identity. This level of control creates an agency relationship between Defendants and its franchisees, rendering Defendants' responsible for the franchisees' actions under the legal doctrine of respondent superior. The Dunkin'® franchisees' conduct in question, therefore, is directly attributable to Defendants, and Defendants should be held accountable for any resulting harm to the Plaintiffs and the Class.

**E. <u>Agency Liability For Acts Of Franchisees</u>**

18.    Defendants' liability for the actions of its franchisees encompasses direct liability under principles of agency law.

19.    **Agency by Agreement (express and implied):** Defendants and its Dunkin'® franchisees are engaged in an actual agency relationship. The franchise agreement creates a principal-agent dynamic, where Defendants, as the principal, delegates the operation of its restaurants to the Dunkin'® franchisees, as its agents. Defendants exercise significant control over its franchisees, dictating not only the "what" of their operations but also the "how." This includes details like its menu board advertisements, employee training, customer interaction, its computer systems, its point-of-sale operating systems, and its marketing and advertising campaigns. Such comprehensive control creates an actual agency relationship, where the

**CLASS ACTION COMPLAINT**

franchisee acts as Defendants' agent, carrying out Defendants' business under its direction and for its benefit. Defendants are, therefore, directly liable for any torts or contractual breaches committed by its franchisees within the scope of this agency relationship. Additionally, the parties' course of dealing, including regular communication, oversight, and direction from Defendants to its franchisees, establishes an implied agency relationship.

20. **Agency by Ratification**: Defendants ratified the actions of its franchisees by accepting the benefits of their conduct. Defendants directly benefited from the sales and profits generated by the Dunkin'® franchisees as detailed in this Complaint.

21. **Agency by Estoppel**: Defendants created an agency relationship by estoppel through its representations and conduct. Defendants held out its franchisees as its agents through its marketing and advertising materials, signage, and website, leading the public to reasonably believe that the franchisees were acting on behalf of Defendants as alleged herein. This reliance by the public created an agency relationship by estoppel, rendering Defendants liable for the acts and omissions of its franchisees.

22. **Actual Authority (express and implied):** At all relevant times, Plaintiffs allege that Defendants provided the factual authority, both express and implied, to the applicable franchise operators, to advertise, market, and solicit for sale the matters in dispute in this Complaint causing harm to the Plaintiffs. This authority is manifested in the detailed operational manuals, marketing and advertising campaigns, stringent quality control standards, mandatory training programs, and regular inspections that Defendants impose on its franchisees. These mechanisms demonstrate an express grant of authority, explicitly delineating the parameters within which Dunkin'® franchisees must operate. Moreover, the franchise agreement itself, coupled with the ongoing supervision and support provided by Defendants,

**CLASS ACTION COMPLAINT**

creates an implied authority, where franchisees reasonably believe they are acting in accordance with Defendants wishes and expectations.

23.    **Apparent Authority:** Furthermore, Defendants, through its extensive advertising, uniform branding, use of point-of-sale systems and software, and centralized marketing efforts, creates an apparent authority, leading consumers to reasonably believe that all Dunkin'® restaurants, whether corporate-owned or franchised, adhere to the same standards of quality and service. This carefully cultivated image fosters a reliance on Defendants' reputation, thereby establishing an estoppel, preventing Defendants from disavowing responsibility for the actions of its Dunkin'® franchisees. Consumers, having been induced to patronize Dunkin'® based on this representation, are entitled to hold Defendants accountable for these standards, regardless of whether the restaurant is directly owned or operated by a Dunkin'® franchisee.

### F. <u>Incorporation of Attachments & Exhibits</u>

24.    Each of the supplements, attachments, declarations, exhibits, pictures or other supplements referenced in this Amended Complaint and attached hereto shall be incorporated by reference as if fully set forth herein at length and in detail.

### III.    <u>JURISDICTION AND VENUE</u>

25.    <u>Original Jurisdiction</u>: This Court has original diversity jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Plaintiffs have availed themselves of the laws of the State of California.  Defendants INSPIRE BRANDS, INC., VALE MERGER SUB, INC., DUNKIN' BRANDS GROUP, INC., and DUNKIN' DONUTS FRANCHISING LLC, are each formed in Delaware, with the principal place of business of INSPIRE BRANDS, INC., located in Atlanta, Georgia, and DUNKIN' DONUTS FRANCHISING LLC located in Canton, Massachusetts. The matter in controversy exceeds the sum or value of

**CLASS ACTION COMPLAINT**

$5,000,000, exclusive of interest and costs, and this is a class action in which the number of members of the proposed class is not less than 100.

26.    <u>Diversity Jurisdiction</u>: In addition, this Court has diversity jurisdiction over each Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(a). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and each Plaintiff of the proposed class is domiciled in a state different from the state in which Defendants are a citizen.

27.    <u>Venue</u>: Venue is proper pursuant to 28 U.S.C. § 1391 in that (i) each Plaintiff resides in this judicial district; (ii) a substantial part of the events or omissions giving rise to each Plaintiffs' claims occurred in this judicial district; (iii) one or more Defendants reside in this judicial district for purposes of § 1391; and (iv) one or more Defendants have used the laws within, and have done substantial business in this judicial district by promoting, marketing, distributing, and selling the products at issue in this action, and there is personal jurisdiction over Defendants in this judicial district.

## IV.    **FACTUAL ALLEGATIONS**

### A.    **Summary of Facts**

28.    This is a class action against Defendants for unfair and deceptive trade practices concerning the addition of undisclosed junk fees that are tacked onto consumer's bill immediately prior to payment.

29.    Plaintiffs, on behalf of themselves and all others similarly situated, allege Defendants' order processing flow and pricing strategy fails to put a reasonable person on notice of a dine-in fee or other hidden fee at its Dunkin'® locations, because (i) the Defendants failed to disclose to Plaintiffs or members of the Class, whether verbally or in writing, that a dine-in fee or other hidden fee applied to their applicable order prior to each such Plaintiff remitting payment, (ii) Defendants' menu-boards fail to disclose the existence of a dine-in fee or other junk fee applying

**CLASS ACTION COMPLAINT**

to purchases, (iii) Defendants are alleged to have improperly trained its fast-foot servers to neglect to disclose a dine-in fee or other hidden fee to Plaintiffs prior to each such Plaintiff paying for their order, and (iv) the only time Defendants disclose the existence of a dine-in fee or other junk fee in writing, is on the receipt after payment is made.

30.     While Defendants advertise items on its menu boards at a fixed price, Defendants deceptively charged a dine-in fee or other junk fee on top of the offering, without disclosing the existence of the surcharge.

31.     Plaintiffs allege that Defendants, through a nationwide corporate policy enforced on its Dunkin'® franchisees, intentionally deceived consumers about a dine-in fee or other junk fee, as evidenced by the consistent experience of Plaintiffs.

## B.    Plaintiff John Michael Taferner

32.     Around November to December 2023, Plaintiff Taferner went into the Dunkin'® located at 27125 Sierra Highway, Santa Clarita, CA. 91351. (Declaration of John Michael Taferner, at ¶2, attached hereto as Exhibit 1).

33.     Plaintiff Taferner always goes inside the store to place his order. (Declaration of John Michael Taferner, at ¶3).

34.     On this occasion, Plaintiff Taferner ordered a medium coffee, that was advertised at a fixed price, but as he proceeded to leave the restaurant, Plaintiff Taferner compared it to the receipt and saw approximately $0.50 cents added to the advertised cost of the coffee as a dine-in fee or other junk fee. (Declaration of John Michael Taferner, at ¶¶ 2, 4).

35.     At no time did the cashier mention that there was an added fee for ordering items inside the restaurant, and Plaintiff Taferner did not see any disclosure about there being an additional fee for ordering an item inside the store.  (Declaration of John Michael Taferner, at ¶ 5).

**CLASS ACTION COMPLAINT**

36.    Plaintiff Taferner was a bit surprised, because the items on the menu board are offered at a fixed price, and was he was frankly extremely disappointed and frustrated because it is a hidden fee that was never disclosed to him. (Declaration of John Michael Taferner, at ¶ 6).

37.    By adding a dining fee or other hidden fee, Plaintiff Taferner expressed he feels cheated and deceived by Defendants, and desires for this bad business practice to immediately end. (Declaration of John Michael Taferner, at ¶ 7).

38.    Plaintiff Taferner expressed that Defendants need to be transparent and to fully inform the public that an additional charge applies for ordering items inside the store. (Declaration of John Michael Taferner, at ¶ 8).

**C.    Plaintiff Itzel Diaz**

39.    As evidenced by Plaintiff Diaz's statement under penalty of perjury on January 24, 2024, Plaintiff Diaz expressed she frequents Dunkin'® located at 4920 Balboa Blvd., Encino, CA. 91316, around two times per month over the past few years. (Declaration of Itzel Diaz, at ¶ 2, attached hereto as Exhibit 2).

40.    Plaintiff Diaz typically goes inside the store and places her order. (Declaration of Itzel Diaz, at ¶ 3).

41.    Plaintiff Diaz usually orders a breakfast sandwich, hash brown, and a coffee, and typically either eats her food there or orders carry out.  (Declaration of Itzel Diaz, at ¶¶ 3, 4).

42.    In or around December 2023, Plaintiff Diaz looked at her receipt and noticed there was a dine-in fee surcharge or other hidden fee on the receipt, which she was surprised to see. (Declaration of Itzel Diaz, at ¶ 5).

43.    Based on her recollection, the fee was less than a dollar, and it was only charged when she would eat her order at this Dunkin'® location. (Declaration of Itzel Diaz, at ¶ 6).

**CLASS ACTION COMPLAINT**

44.    Plaintiff Diaz expressed that she only became aware of the fee after paying for her order, and seeing the fee on her receipt. (Declaration of Itzel Diaz, at ¶ 7).

45.    No one at this location informed her about the dine-in fee or other junk fee, and she wasn't aware or made aware of any disclosure concerning the added fee. (Declaration of Itzel Diaz, at ¶ 8).

46.    Plaintiff Diaz expressed that she believes other customers have been unfairly charged this fee, without knowing about it. (Declaration of Itzel Diaz, at ¶ 9).

47.    Plaintiff Diaz expressed that she wants Defendants to do the right thing and remove the dine-in fee or other junk fee, disclose it before charging the fee, or at least let customers know about their options before Defendants simply add on the fee – simply put, to be transparent. (Declaration of Itzel Diaz, at ¶ 10).

**D.    General Allegations**

48.    Plaintiffs, by and through the undersigned counsel, make the following allegations, based on information and belief.

49.    In the fast-food context, where speed is prioritized, visual cues strongly influence consumer decisions, and expecting customers to inquire as to whether junk fees apply to their order is simply unreasonable.

50.    This deceptive conduct is especially harmful for a key demographic: low-income wage earners, including a substantial subset of immigrants with limited English proficiency, who depend heavily on visual aids and properly trained employees.

51.    Defendants' reliance on the fee being nominal or inconsequential is misplaced, because surreptitiously adding fees on top of already advertised pricing without full and fair disclosure, would be tantamount to the permissibility of any business to fraudulently charge fees without the knowledge of the consumer.

**CLASS ACTION COMPLAINT**

52.     Plaintiffs allege that Defendants made a calculated decision to prioritize a sleek and minimalist aesthetic in its marketing, deliberately sacrificing comprehensive consumer disclosure for visual appeal. This practice diverges sharply from industry norms, where other fast-food establishments provide more complete disclosures to ensure consumers are fully informed. Defendants were aware of the risks inherent in this strategy and willingly accepts them to achieve its marketing and financial objectives.

53.     Further, Plaintiffs allege, based on information and belief, that Defendants' charging of dine-in fees or other hidden fees were in response to anticipated shortfalls in revenue by the onset of COVID-19, with such deceptive practice continuing throughout the entire term of COVID-19, until such time as businesses were no longer restricted by COVID-19 restrictions.

54.     Plaintiffs further allege, based on information and belief, that Defendants do not properly inform consumers that a dine-in fee or other hidden fee would apply to their order, and otherwise give Plaintiffs and members of the Class, an opportunity not to pay the junk fee or elect carry-out as an alternative, without the addition of the dine-in fee or other junk fee.

55.     Plaintiffs further allege, based on information and belief, that Defendants have fail to properly train its staff and employees, to properly inform consumers about the existence of the dine-in fee or other junk fees, prior to charging consumers the hidden fee.

**E.     <u>Investigation by Class Counsel</u>**

56.     In an attempt to verify the allegations in bringing this Complaint, in January and February of 2024, Plaintiffs' counsel investigated the merits of Plaintiffs' allegations by visiting various Dunkin'® establishments.    As a part of the investigation, Plaintiffs' counsel visited various Dunkin'® establishments and did not

**CLASS ACTION COMPLAINT**

see any disclosure concerning the applicability of a dine-in fee, junk fee or other hidden fees on its menu boards.

57.    Despite the foregoing, Plaintiffs' counsel was unable to verify the charging of any such dine-in fee or other junk fee at the locations visited.

58.    Plaintiffs allege, based on information and belief, by and through its undersigned counsel, that in anticipation of the enactment of California Senate Bill (S.B.) 478, originally proposed by California Attorney General Rob Bonta on October 7, 2023, Defendants instructed all of its franchisees to immediately discontinue charging of dine-in fees or other junk fees, which has resulted in changed practices, and hidden fees no longer being charged at Dunkin® establishments (*See* California Office of Attorney General announcement, attached hereto as <u>Exhibit 3</u>, and available at <u>https://oag.ca.gov/news/press-releases/attorney-general-bonta%E2%80%99s-sponsored-bill-ban-hidden-fees-california-signed-law</u>).

59.    Plaintiffs' counsel also researched Dunkin'® online complaints and came across a Reddit post from approximately two years ago, available at <u>https://www.reddit.com/r/mildlyinteresting/comments/tjnrf1/dunkin_donuts_charges_an_employee_wellness_fee/?rdt=34753</u>, and attached hereto as <u>Exhibit 4</u>, showing an image of a receipt showing an "employee wellness" fee added to the order total.



- 13 -

**CLASS ACTION COMPLAINT**

60.    Below are true and accurate photographs of the Dunkin'® in-store menu board located at 42225 Jackson St., Bldg. J, Indio, CA. 92203, taken on January 29, 2024, attached hereto as Exhibit 5 and Exhibit 6, respectively, failing to show a dine-in fee or other hidden fee disclosure.



**Exhibit 5, Photo of Indio In-Store Menu Board**
**Location: 42225 Jackson St., Bldg. J, Indio, CA. 92203**
**Date of Photo: January 29, 2024, at 10:52AM**



**Exhibit 6, Photo of Indio In-Store Menu Board**
**Location: 42225 Jackson St., Bldg. J, Indio, CA. 92203**
**Date of Photo: January 29, 2024, at 10:52AM**

**CLASS ACTION COMPLAINT**

61.     Below is a true and accurate photograph of the Dunkin'® drive-through menu board located at 42225 Jackson St., Bldg. J, Indio, CA. 92203, taken on January 27, 2024, attached hereto as <u>Exhibit 7</u>, failing to show a dine-in fee or other hidden fee disclosure.



**<u>Exhibit 7</u>, Photo of Indio Drive Through Menu Board**
**Location: 42225 Jackson St., Bldg. J, Indio, CA. 92203**
**Date of Photo: January 27, 2024, at 8:21AM**

**CLASS ACTION COMPLAINT**

62.     Below are true and accurate photographs of the Dunkin'® establishment menu board located at 1614 S. Crenshaw Blvd., Los Angeles, CA. 90019, taken on January 10, 2024, attached hereto as Exhibit 8 and Exhibit 9, respectively, failing to show a dine-in fee or other hidden fee disclosure.



**Exhibit 8, Photo of Los Angeles In-Store Menu Board**
**Location: 1614 S. Crenshaw Blvd., Los Angeles, CA. 90019**
**Date of Photo: January 10, 2024, at 7:23AM**



**Exhibit 9, Photo of Los Angeles In-Store Menu Board**
**Location: 1614 S. Crenshaw Blvd., Los Angeles, CA. 90019**
**Date of Photo: January 10, 2024, at 7:23AM**

- 16 -

63.     While Plaintiffs' counsel's investigation did not disclose the existence of the dine-in fee or other hidden fee, Plaintiffs' counsel alleges that Defendants' changed its practices and procedures to no longer charge a dine-in fee or other hidden at some point in 2024, and seeks to determine the veracity of Plaintiffs' claims through discovery.

64.     Plaintiffs' counsel in bringing this Class Action Complaint is relying upon the signed declarations of the Plaintiffs, and to the extent evidence does not establish that any dine-in fee or other hidden fee was charged by Defendants, Plaintiffs will promptly dismiss this Class Action Complaint.

## V.     CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23 (b)(3).

(i)     Plaintiffs seek to represent the following "General Class":

All consumers in the United States who purchased any item from any Dunkin'® location and were charged a dine-in fee or other junk fee, commencing from the legally applicable period preceding the filing date of this action, until it is resolved, and/or such other class or subclass as the Court may deem appropriate.

(ii) Plaintiffs seek to represent the following subclass, titled "California Subclass":

All consumers in California who purchased any item from any Dunkin'® location and were charged a dine-in fee or other junk fee, commencing from the legally applicable period preceding the filing date of this action, until it is resolved, and/or such other class or subclass as the Court may deem appropriate.

66.     The General Class, together with the California Subclass, shall collectively be referred to as the "Class."

- 17 -
**CLASS ACTION COMPLAINT**

67.    Plaintiffs reserve the right to amend the definition of the Class if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

68.    Plaintiffs reserve the right to establish additional sub-classes as appropriate.

69.    This action is brought and properly may be maintained as a class action under the provisions of Federal Rules of Civil Procedure 23(a)(l)-(4) and 23(b)(2) and (b)(3), and satisfies the requirements thereof.

70.    There is a well-defined community of interest among members of the Class, and the disposition of the claims of these members of the Class in a single action will provide substantial benefits to all parties and to the Court.

71.    The members of the Class are so numerous that joinder of all members of the Class is impracticable. At this time, Plaintiffs believe that the Class includes millions of members. Therefore, the Class is sufficiently numerous that joinder of all members of the Class in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(l), and the resolution of their claims through the procedure of a class action will be of benefit to the parties and the Court.

72.    Plaintiffs' claims are typical of the claims of the members of the Class whom they seek to represent because Plaintiffs and each member of the Class has been subjected to the same deceptive and improper practices by Defendants and have been damaged in the same manner.

73.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiffs have no interests that are adverse to those of the members of the Class that they seek to represent. Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel that is competent and experienced in handling complex class action litigation on behalf of consumers.

**CLASS ACTION COMPLAINT**

74. A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this Amended Complaint under Federal Rule of Civil Procedure 23(b)(3) because:

a. The expense and burden of individual litigation would not be economically feasible for members of the Class to seek to redress their claims other than through the procedure of a class action.

b. If separate actions were brought by individual members of the Class, the resulting multiplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

c. Absent a class action, Defendants likely would retain the benefits of their wrongdoing, and there would be a failure of justice.

75. Common questions of law and fact exist as to the members of the Class, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions that affect individual members of the Class within the meaning of Federal Rule of Civil Procedure 23(b)(3).

76. The common questions of fact include, but are not limited to, the following:

a. Whether Defendants were unjustly enriched by their conduct;

b. Whether members of the Class suffered ascertainable losses as a result of Defendants' misrepresentations;

c. Whether, as a result of Defendants' misconduct as alleged herein, Plaintiffs and the members of the Class are entitled to restitution, injunctive relief and/or monetary relief, and if so, the amount and nature of such relief;

d. Whether Defendants made any statement they knew or should have known were false or misleading;

**CLASS ACTION COMPLAINT**

e. Whether Defendants maintained a longstanding marketing policy, practice and strategy of charging a dine-in fee or other junk fee, without fully and transparently disclosing the fee until after payment is remitted;

f. Whether the utility of Defendants' practices, if any, outweighed the gravity of the harm to the victims;

g. Whether Defendants' conduct violated public policy or specific laws;

h. Whether Defendants' conduct or any of their practices violated California Business & Professions Code § 17200, *et seq.*, and § 17500, *et seq.*, and any other regulation, statute or law the Court determines appropriate;

i. Whether Defendants are in breach of express warranty and/or contract by charging a dine-in fee or other junk fee, without full and fair disclosure, until after consumers remit payment;

j. Whether a contract exists based on the original advertisement of the meal on the menu board, without the addition of the dine-in fee or other junk fee, under the equitable doctrine of promissory estoppel;

k. Whether Defendants fraudulently concealed the existence of the dine-in fee or other junk fee, as a part of its marketing and advertising scheme;

l. Whether Defendants negligently misrepresented the cost of the applicable items on its menu boards, by later charging consumers a dine-in fee or other junk fee, without full and fair disclosure;

m. Whether Defendants intentionally misrepresented the cost of the applicable items on its menu boards, by later charging consumers a dine-in fee or other junk fee, without full and fair disclosure;

n. The proper equitable and injunctive relief;

o. The proper amount of restitution or disgorgement; and

p. The proper amount of reasonable litigation expenses and attorneys' fees.

**CLASS ACTION COMPLAINT**

77.    Plaintiffs are not aware of any difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
### (Violation of Business & Professions Code § 17200 *et seq.*)
### (On Behalf of the California Subclass)

78.    Each and every allegation contained in every preceding paragraph is repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and in detail.

79.    Plaintiffs Taferner and Diaz (collectively, "California Plaintiffs") assert this cause of action on behalf of themselves and members of the California Subclass.

80.    California Business & Professions Code § 17200 *et seq.* prohibits unfair competition that is any unfair, unlawful, or fraudulent business practice ("UCL").

### *"Unfair" Prong*

81.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to consumers, and the unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

82.    Defendants' actions constitute unfair business practices because, as alleged above, Defendants engaged in the misleading and deceptive practice by charging a dine-in fee or other junk fee, without fully informing and transparently disclosing the dine-in fee or other junk fee until after payment was rendered. Defendants carefully designed an ordering process flow intending to conceal the fee, by failing to disclose the fee until after payment is remitted. Defendants' acts and practices violate established public policy regarding transparent pricing, and demonstrates immoral, unethical, oppressive, and unscrupulous conduct that causes substantial harm to consumers.

**CLASS ACTION COMPLAINT**

83.    The harm to members of the California Plaintiffs and California Subclass outweighs the utility of Defendants' practices. There were reasonably available alternatives to further Defendants' legitimate business interests other than the misleading and deceptive conduct described herein.  For example, in the event Defendants properly informed consumers that a dine-in fee or other junk fee would apply to their order, one or more Plaintiffs or members of the Class would not have paid for their order, or would have elected carry out, without the addition of the dine-in fee or other junk fee.

### *"Fraudulent" Prong*

84.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

85.    Defendants' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived California Plaintiffs and are highly likely to deceive members of the consuming public.  California Plaintiffs relied on Defendants' fraudulent and deceptive representations by ordering items on Defendants' menu boards, advertised at a fixed cost, only to later be surreptitiously charged a dine-in fee or other junk fee after paying for their orders. These misrepresentations played a substantial role in one or more California Plaintiff's decision to continue to dine at Dunkin'®. In the event Defendants properly informed consumers that a dine-in fee or other junk fee would apply to their orders, one or more Plaintiffs or members of the Class would not have paid for their order, or would have elected carry out, without the addition of the dine-in fee or other junk fee.

### *"Unlawful" Prong*

86.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

87.    Defendants acts and practices alleged above constitute unlawful business acts or practices as they violate state and federal law in connection with their

**CLASS ACTION COMPLAINT**

deceptive marketing and pricing scheme. The Federal Trade Commission's Act
("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce"
(15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements (15
U.S.C.§ 52(a)). The FTCA imposes a high standard of truthfulness on advertisers
and does not require proof of intent to deceive.

88.    As detailed herein, the acts and practices alleged were intended to result
in, or did result in, violations of the FTCA and UCL.

89.    Defendants' practices, as set forth above, have misled California
Plaintiffs, the members of the proposed California Subclass, and the public in the past
and will continue to mislead in the future. Consequently, Defendants' practices
constitute unlawful, fraudulent, and unfair business practices within the meaning of
the UCL.

90.    Defendants' misrepresentations and nondisclosures are material, in that a
reasonable person would attach importance to the information and would be induced
to act on the information in making purchase decisions.

91.    California Plaintiffs and members of the California Subclass reasonably
relied on Defendants' material misrepresentations and nondisclosures. These
misrepresentations and nondisclosures played a substantial role in one or more
California Plaintiff's decision to continue to dine at Dunkin' Donuts. In the event
Defendants properly informed consumers that a dine-in fee or other junk fee would
apply to the order, one or more Plaintiffs or members of the Class would have elected
not to purchase the order, or would have elected carry out, without the addition of the
dine-in fee or other junk fee.

92.    As a direct and proximate result of Defendants' unfair, unlawful, and
fraudulent conduct, California Plaintiffs and members of the California Subclass lost
money or property.

**CLASS ACTION COMPLAINT**

93.    Defendants' conduct caused substantial injury to California Plaintiffs and members of the California Subclass. Accordingly, California Plaintiffs and members of the California Subclass seek an order enjoining Defendants' from committing such unlawful, unfair, and fraudulent business practices to the extent a dine-in fee or other junk fee continue to be charged, and seek the full amount of money that California Plaintiffs and members of the California Subclass paid as a dine-in fee or other junk fee, and/or restitutionary disgorgement of profits. California Plaintiffs and members of the California Subclass also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

**SECOND CAUSE OF ACTION**
**(Violation of Business & Professions Code § 17500 *et seq.*)**
**(On Behalf of the California Subclass)**

94.    Each and every allegation contained in every preceding paragraph is repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and in detail.

95.    California Plaintiffs assert this cause of action on behalf of themselves and members of the California Subclass.

96.    Cal. Bus. & Prof. Code § 17500 provides:

It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…

 (Emphasis added).

97.    Defendants have committed acts of untrue and misleading advertising, as defined by California Business and Professions Code § 17500 *et seq.*, including,

**CLASS ACTION COMPLAINT**

without limitation, making material misrepresentations by failing to disclose and actively conceal material information regarding surcharges as more thoroughly described above.

98.    Defendants' misrepresentations and nondisclosures deceive or have a tendency to deceive the general public.

99.    Defendants' misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

100.    California Plaintiffs and members of the California Subclass reasonably relied on Defendants' material misrepresentations and nondisclosures. These misrepresentations played a substantial role in one or more California Plaintiff's decision to continue to dine at Dunkin' Donuts. In the event Defendants properly informed consumers that a dine-in fee or junk fee would apply to their order, one or more Plaintiffs or members of the Class would not have paid for their order, or would have elected carry out, without the addition of the dine-in fee or other junk fee.

101.    As a direct and proximate result of Defendants' conduct, California Plaintiffs and members of the California Subclass lost money or property.

102.    Defendants' conduct caused substantial injury to California Plaintiffs and members of the California Subclass. Accordingly, California Plaintiffs and members of the California Subclass seek an order enjoining Defendants' from committing such practices (to the extent not otherwise having stopped) and seek the full amount of money that California Plaintiffs and members of the California Subclass paid as a dine-in fee or other junk fee, and/or restitutionary disgorgement of profits. California Plaintiffs and members of the California Subclass also seek attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

**CLASS ACTION COMPLAINT**

### THIRD CAUSE OF ACTION
**(Breach of Express Warranty; Breach of Contract)**
**(On Behalf of the General Class)**

103.  Each and every allegation contained in every preceding paragraph is repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and in detail.

104.  Plaintiffs assert this cause of action on behalf of themselves and members of the Class.

105.  Under the Restatement (Second) of Contracts, three key elements are generally required for a binding contract to be formed: (i) an offer - a manifestation of willingness to enter into a bargain on certain terms made in a way that justifies another person in understanding that an agreement will be reached if they accept; (ii) acceptance – a manifestation of assent to the terms of the offer made by the offeree in a manner invited or required by the offer; (iii) consideration - something of value given by the promisee to the promisor or something detrimental done or promised to be done by the promisee.

106.  Plaintiffs, and each member of the Class, formed a contract with Defendants at the time they ordered an their items as advertised, without the applicable dine-in fee or other junk fee. The terms of that contract include the promises and affirmations of fact made by Defendants through their marketing materials and statements, as described above, which constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendants on the other – without the applicability of the undisclosed dine-in fee or other junk fee.[1]

---

[1] "'In considering expressions of agreement, the court must not hold the parties to some impossible, or ideal, or unusual standard. It must take language as it is and people as they are. All agreements have some degree of indefiniteness and some degree of uncertainty…' "(*Rivers v. Beadle* (1960) 183 Cal.App.2d 691, 695 [7 Cal. Rptr. 170].) Moreover, " '[t]he law leans against  [***14] the destruction of contracts because of uncertainty and favors an interpretation which will carry into effect the

**CLASS ACTION COMPLAINT**

107.    Plaintiffs, and members of the Class, purchased items based on Defendants' representations, and without being informed of any dine-in fee or other junk fee.

108.    All conditions precedent to Defendants' liability under this contract have been performed by Plaintiffs and members of the Class.

109.    Defendants' breached the terms of this contract, including the express warranties, with Plaintiffs and members of the Class by providing Plaintiffs and members of the Class with their order only after applying an undisclosed dine-in fee or junk fee.

110.    As a result of Defendants' breach of its contract and warranties, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Fraudulent Concealment)
### (On Behalf of the General Class)

111.    Each and every allegation contained in every preceding paragraph is repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and in detail.

112.    Plaintiffs assert this cause of action on behalf of themselves and members of the Class.

113.    By failing to fully disclose that a dine-in fee or other junk fee would apply to the applicable order either verbally or in writing, except until after payment was remitted by Plaintiffs and the disclosure appeared on the receipt, Defendants intentionally misrepresented or concealed the dine-in fee or other junk fee from Plaintiffs and members of the Class.

---

reasonable intention of the parties if it can be ascertained.'" *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 777, 164 Cal. Rptr. 3d 601, 608 (2013).

**CLASS ACTION COMPLAINT**

114.    Plaintiffs and members of the Class relied on these representations and omissions in purchasing the Defendants' advertised items as a purported fixed cost, only to have a dine-in fee or other junk fee added to their order.

115.    In the event Defendants properly informed consumers that a dine-in fee or other junk fee would apply to their order, one or more Plaintiffs or members of the Class would not have paid for their order, or would have elected carry out, without the addition of the dine-in fee or other junk fee.

116.    Defendants performed the wrongful acts, concealed vital information and made affirmative representations during the relevant time period of this lawsuit with the intent of gaining its own financial advantage to the disadvantage of Plaintiffs and members of the Class.

117.    As a result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered economic losses and non-economic losses, all in an amount to be proven at trial.

118.    Defendants' wrongful acts alleged herein were done maliciously, oppressively and with the intent to mislead and defraud. Accordingly, Plaintiffs and members of the Class are entitled to punitive and exemplary damages.

### FIFTH CAUSE OF ACTION
**(Negligent Misrepresentation)**
**(On Behalf of the General Class)**

119.    Each and every allegation contained in every preceding paragraph is repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and in detail.

120.    Plaintiffs assert this cause of action on behalf of themselves and members of the Class.

121.    At all relevant times, Defendants made express promises by advertising items on its menu-boards at a fixed cost, and failing to disclose verbally or in writing

**CLASS ACTION COMPLAINT**

that a dine-in fee or other junk fee would apply to the order, until after Plaintiffs and members of the Class remitted payment.

122.   In the event Defendants properly informed consumers that a dine-in fee or other junk fee would apply to the order, one or more Plaintiffs or members of the Class would not have purchased the order, or would have elected carry out, without the addition the dine-in fee or other junk fee.

123.   As such, Defendants used false and misleading statements by omitting to explain that a dine-in fee or other junk fee would apply to the order, inducing Plaintiffs and members to simply place their order.

124.   Plaintiffs and members of the Class justifiably relied upon Defendants' false and misleading statements by failing to disclose that a dine-in fee or other junk fee would apply to the order advertised on its menu board. As a direct and proximate result of the above-described practices, Plaintiffs and members of the Class sustained damages in an amount to be proven at trial.

**<u>SIXTH CAUSE OF ACTION</u>**
**(Intentional Misrepresentation)**
**(On Behalf of the General Class)**

125.   Each and every allegation contained in every preceding paragraph is repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and in detail.

126.   Plaintiffs assert this cause of action on behalf of themselves and members of the Class.

127.   At all relevant times, Defendants made express promises that items on its menu board were offered at a fixed price, only to add a dine-in fee or other junk fee to their order, without fully and transparently disclosing the existence of the dine-in fee or other junk fee until after payment was made and the Plaintiffs had an opportunity to examine the receipt.

**CLASS ACTION COMPLAINT**

128.  Upon information and belief, Defendants knew or should have known that by failing to disclose the existence of a dine-in fee or other junk fee until after payment was remitted by Plaintiffs and members of the Class, such conduct was false and misleading.

129.  As such, Defendants used false and misleading statements by failing to disclose the dine-in fee or other junk fee, inducing customers to place their orders based on its advertised menu-board offerings.

130.  Plaintiffs and members of the Class justifiably relied upon Defendants' false and misleading statements in deciding whether to purchase meals. As a direct and proximate result of the above-described practices, Plaintiffs and members of the Class sustained damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)
### (On Behalf of the General Class)

131.  Each and every allegation contained in every preceding paragraph is repeated, reiterated, and realleged with the same force and effect and incorporated by reference as if fully set forth herein at length and in detail.

132.  Plaintiffs assert this cause of action on behalf of themselves and members of the Class.

133.  Plaintiffs and members of the Class have conferred a benefit upon Defendants by purchasing Defendants' advertised menu items offered at fixed prices, without fully disclosing the applicability of a dine-in fee or other junk fee until after payment was remitted.

134.  By their deceptive, misleading and unlawful conduct alleged herein, Defendants have unjustly received and retained benefits at the expense of Plaintiffs and members of the Class, including, without limitation, funds that Plaintiffs and members of the Class paid to Defendants as a dine-in fee or other junk fee.

**CLASS ACTION COMPLAINT**

135.   Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiffs and members of the Class that it unjustly received as result of its deceptive, misleading and unlawful conduct alleged herein without providing compensation to Plaintiffs and members of the Class.   It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation they obtained from the deceptive, misleading, unfair and unlawful conduct alleged herein.

136.   Plaintiffs and members of the Class have suffered financial loss as a direct result of Defendants' conduct.

137.   Plaintiffs and members of the Class are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits and other compensation obtained by Defendants, and for such other relief that this Court deems proper, as a result of Defendants' deceptive, misleading and unlawful conduct.

138.   In the event Defendants properly informed consumers that a dine-in fee or other junk fee would apply to orders, one or more Plaintiffs or members of the Class would not have placed their order, or would have elected carry out, without the addition the dine-in fee or other junk fee.

## VI.   <u>REQUESTED RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, pray that this Court enter a judgment, as follows:

a.   Certifying the Class (and each applicable subclass) as requested herein, and certifying each Plaintiff as a Class representative;

b.   Ordering that Defendants are financially responsible for notifying all members of the Class of the alleged misrepresentations and omissions set forth herein;

**CLASS ACTION COMPLAINT**

c.     Awarding Plaintiffs, and members of the Class, compensatory damages in an amount according to proof at trial;

d.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and members of the Class;

e.     Awarding declaratory and injunctive relief, including: enjoining Defendants from continuing the unlawful practices referenced herein, and directing Defendants to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful or unlawful;

f.     Awarding punitive damages to Plaintiffs and members of the Class;

g.     Ordering Defendants to stop charging a dine-in fee or other junk fee and to correct the deceptive advertising conduct, if such charges have not already ceased;

h.     Awarding interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

i.     Awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action; and

j.     Directing such other and further relief as the Court deems just and proper.

## VII.   <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and members of the Class demand a trial by jury as to all matters so triable.

**CLASS ACTION COMPLAINT**

1

2          I declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the

3    foregoing is true and correct, to the best of my knowledge.

4

5

6    Dated: July __8__, 2024                    _____

7                                               Cameron Nazemi, Esq. (SBN. 260155)
                                                CWN, Inc., a professional law corporation
8                                               *Counsel for Plaintiffs and the proposed Class*

9

10   **LIST OF ATTACHMENTS & EXHIBITS**:

11
     **Exhibits**:
12   Exhibit 1:         Declaration of John Michael Taferner;

13   Exhibit 2:         Declaration of Izel Diaz;

     Exhibit 3:         California Office of Attorney General announcement;
14   Exhibit 4:         Reddit Post showing an image of a receipt showing an "employee
                        wellness" fee added to the order total;
15
     Exhibit 5:         Photo of Indio In-Store Menu Board
16                      Location: 42225 Jackson St., Bldg. J, Indio, CA. 92203
                        Date of Photo: January 29, 2024, at 10:52AM;
17
     Exhibit 6:         Photo of Indio In-Store Menu Board
18                      Location: 42225 Jackson St., Bldg. J, Indio, CA. 92203
                        Date of Photo: January 29, 2024, at 10:52AM;
19
     Exhibit 7:         Photo of Indio Drive Through Menu Board
20                      Location: 42225 Jackson St., Bldg. J, Indio, CA. 92203
                        Date of Photo: January 27, 2024, at 8:21AM;
21
     Exhibit 8:         Photo of Los Angeles In-Store Menu Board
22                      Location: 1614 S. Crenshaw Blvd., Los Angeles, CA. 90019
                        Date of Photo: January 10, 2024, at 7:23AM; and
23
     Exhibit 9:         Photo of Los Angeles In-Store Menu Board
24                      Location: 1614 S. Crenshaw Blvd., Los Angeles, CA. 90019
                        Date of Photo: January 10, 2024, at 7:23AM
25

26

27

28

                                            - 33 -